UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                          :

INTEGRATED CONSTRUCTION ENTERPRISES, INC., :
                                          :              16 Civ. 5561 (PAE)

                           Plaintiff,     :

                                          :             OPINION & ORDER

                  -v-                    :

                                          :

GN ERECTORS, INC., et al.,               :

                                          :

                         Defendants.    :

                                          :
------------------------------------------------------------------------ X

**PAUL A. ENGELMAYER, District Judge:**

      This case is a multi-defendant contractor-subcontractor dispute related to the construction

of a new entrance and security pavilion at the Daniel Patrick Moynihan U.S. Courthouse in New

York City from 2014 to 2016 (the "Project"). With discovery complete, Michael Sergi, the sole

individual defendant, has moved for summary judgment on the one cause of action in which he is

named: the claim by plaintiff Integrated Construction Enterprises, Inc. ("Integrated") that he

committed fraud. For the following reasons, the Court grants the motion in part and denies it in

part.

## I.    Background

### A.    Facts

#### 1.    The Parties

      Integrated is a general contractor that was awarded the contract for the Project by the

U.S. Government Services Agency ("GSA"). Defendant GN Erectors, Inc. ("GN"), was awarded

a subcontract by Integrated to manufacture and install certain components of the Project.

Defendant Greenfield Metals, Inc. ("Greenfield"), was a vendor used by GN to fabricate some of

those components. Sergi is GN's President. Patriot Armored Systems, LLC ("Patriot Armor"), formerly known as U.S. Armor, LLC, is a terminated defendant in this action, *see* Dkt. 52, and was GN's supplier of ballistic, or blast-proof, glass for the Project.

### 2. Factual Background[1]

In December 2013, the GSA awarded Integrated the contract for the Project. JSF ¶¶ 7, 8. The contract specified a project duration of 540 days, with work to be commenced by February 14, 2014, substantially completed by August 15, 2015, and closed out by October 2015. *Id.* ¶ 9. Integrated initially accepted a bid from Safe Zone Ballistics ("Safe Zone") to serve as the subcontractor that would supply the blast resistant windows, doors, skylight, and other features of the building envelope[2] for the project. *Id.* ¶ 13. Safe Zone, however, was unable to deliver

---

[1] The Court draws its account of the underlying facts from: the parties' respective submissions on the motion for summary judgment, including Sergi's statement pursuant to Local Civil Rule 56.1, *see* Dkt. 84 ("Def. 56.1"); Integrated's counter-statement, *see* Dkt. 87 ("Pl. 56.1"), and response to Sergi's Rule 56.1 statement, *see* Dkt. 87 ("Pl. 56.1 Response"); Sergi's response to Integrated's Rule 56.1 statement, *see* Dkt. 90 ("Def. 56.1 Response"); the first Declaration of Michael Sergi in support of his motion, *see* Dkt. 84, ("First Sergi Decl."), and attached exhibits; the Declaration of Paul Cherbaka in opposition to Sergi's motion, *see* Dkt. 87 ("Cherbaka Decl."), and attached exhibits; the Declaration of Indranie Ramcharan in opposition to Sergi's motion, *see* Dkt. 87 ("Ramcharan Decl."), and attached exhibits; the Reply Declaration of Michael Sergi in support of his motion, *see* Dkt. 90 ("Sergi Reply Decl."), and attached exhibits; and the parties' joint statement of undisputed facts, Dkt. 83 ("JSF").

Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein. When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and not denied by the other party, or denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2] The term "building envelope" refers to the outer shell of a building. The building envelope serves both practical (*e.g.*, structural support, climate control) and aesthetic purposes. JSF ¶ 21.

acceptable shop drawings for the elements it had been hired to design, manufacture, and install, and ultimately withdrew from the project on September 3, 2014. *Id.* ¶¶ 15–17. As a result, eight months into the project, "no shop drawings . . . related to the entrance pavilion had been approved, no materials had been ordered with respect to this portion of the project and [Integrated] had not hired any entity to install the store front." *Id.* ¶ 18.

Integrated turned to Old Castle Building Envelope ("Old Castle"), a Rhode Island company that "marketed itself as a company that provided similar products to that which [Safe Zone] was to provide" under its now terminated subcontract. *Id.* ¶¶ 22–23. Old Castle referred Integrated to Greenfield, its New York distributor. *Id.* ¶ 24. Greenfield, in turn, referred Integrated to GN, an authorized installer of Old Castle products. *Id.* ¶¶ 25–26. Ultimately, GN entered into a subcontract with Integrated to provide mock-ups[3] for, and then produce and install, "the [b]last [r]esistant [s]torefront, [s]kylight, interior security partitions, window[s,] and doors associated with the storefront and interior security partitions . . . all stainless steel cladding for columns, beams, etc., [and] [five] exterior glass air-vent[s]." *Id.* ¶ 32. Under this arrangement, Old Castle would supply materials to Greenfield, which would fabricate them according to specifications provided by GN, which would then install them at the Project site. *Id.* ¶¶ 30–31.

After signing the subcontract in October 2014, GN's first major task was to obtain shop drawings for the various components from Old Castle, *id.* ¶ 51, based on the architectural drawings, schematics, and diagrams it had been provided, *id.* ¶ 68. The shop drawings, in turn, would provide the basis from which Greenfield would fabricate the mock-ups and, ultimately, the components to be installed for the Project. Delivery of the shop drawings, however, was

_____

[3] A "mock-up" is a scale model upon which various tests are conducted to determine if an architect's design can meet the project specifications, which in this case included water-proofing and blast resistance. JSF ¶ 45.

delayed, as were other stages of the construction process, including completion of the mock-ups and delivery of various components to the job site. The causes of, and responsibility for, this delay are factual disputes at the heart of this lawsuit. As a result, completion of the Project was delayed, *id.* ¶ 131; the GSA imposed financial penalties on Integrated, *id.* ¶ 132; and Integrated eventually terminated its subcontract with GN, *id.* ¶¶ 133–34.

### 3. Integrated's Claim of Fraud against Michael Sergi

In its Eighth Cause of Action, Integrated alleges that Sergi, GN's President, personally committed fraud. Dkt. 3 ("FAC") ¶¶ 183–204. Integrated's First Amended Complaint advances two theories of fraud.

First, Integrated alleges that Sergi fraudulently induced it to enter into the subcontract by falsely representing that his company was financially sound, had sufficient manpower to complete the job in a timely manner, and had excellent relationships with its suppliers. *Id.* ¶ 191.

Second, Integrated alleges that Sergi made false material statements or omissions during the course of GN's performance of the subcontract. *Id.* ¶ 203. The falsehoods at issue related to GN's ability to meet intermediate project deadlines; the steps Sergi had taken to ensure those deadlines would be met; the progress that had been made on ordering various component parts for the Project, especially the blast-proof glass; and his timely payment to vendors in order to obtain those parts on schedule.[4] *Id.*

---

[4] Specifically, Integrated alleges, *inter alia*, that Sergi misrepresented: "when GN would receive materials for the completion of GN's work under the subcontract; . . . dates that the mock-up would be 100 percent completed; . . . the proposed schedule for when GN's work would be completed; . . . that GN had at its facility sufficient materials to provide mock-ups as per the conditions of the contract; . . . that GN had sufficient manpower to complete the mock-ups and abide by the schedule as required; . . . dates that Greenfield would promptly deliver materials to the site; . . . that GN was promptly paying its suppliers as [Integrated] was making payments to GN; . . . that he had provided all dimensions for steel in order for Greenfield to complete certain work under the project; . . . that all glass for the project had been ordered [including] . . . a

### B.     Procedural History

On July 13, 2016, Integrated filed its complaint.  Dkt. 1.  On July 15, 2016, at the

direction of Judge Torres, to whom the matter was then assigned, Integrated filed an amended

complaint.  FAC.  On November 22, 2016, the case was reassigned to Judge Forrest.  On

December 8, 2016, Judge Forrest granted a partial motion to dismiss, terminating Patriot Armor

as a defendant.  Dkt. 52.  On September 20, 2018, the case was reassigned to this Court.  On

January 31, 2019, fact discovery concluded.  *See* Dkt. 71.

On April 3, 2019, Integrated and Sergi filed their joint statement of undisputed material

facts.  JSF.  On April 15, 2019, Sergi filed the instant motion for partial summary judgment on

Integrated's fraud claim, FAC ¶¶ 183–204.  Dkt. 84.  Sergi also filed his Rule 56.1 statement,

Dkt. 84-1, the Sergi declaration, Dkt. 84-2, and an accompanying memorandum of law, Dkt. 84-

3 ("Def. Mem.").  On May 6, 2019, Integrated filed its response to Sergi's Rule 56.1 statement,

Dkt. 87, its Rule 56.1 counter-statement, Dkt. 87-1, the Cherbaka declaration, Dkt. 87-2, the

Ramcharan declaration, Dkt. 87-3, and an accompanying memorandum of law, Dkt. 87-5 ("Pl.

Mem.").  On May 13, 2019, Sergi filed a reply brief, Dkt. 90 ("Def. Reply"), a reply to

Integrated's Rule 56.1 counter-statement, Dkt. 90-1, and the Sergi reply declaration, Dkt. 90-2.

## II.     Legal Standards for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

definite date for glass for the north elevation, small bays, and six bays of the skylights; . . . that
he had sent suppliers of GN appropriate documentation and letters confirming delivery dates of
materials to the site; . . . that he had frames for the interior doors for the Project in his shop when,
in fact, he did not . . . that he had brass bars to line the windows for the Project in his shop, when,
in fact, he did not  . . . ; and  . . . that he had used payments from [Integrated] to pay his
suppliers," including the supplier of ballistic glass for the project, "when, in fact, he had not."
*Id.* ¶ 203.

law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, brackets, and citation omitted).  Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III.  Discussion

### A.  Choice of Law

A threshold question, although not identified by the parties, is which state's law applies to Integrated's fraud claim.  Both parties treat New Jersey law as governing.  The subcontract at the center of this dispute contains a choice of law provision stating that "[t]his agreement shall be

governed by the laws of New Jersey," but it does not identify the law applicable to a tort claim between the parties. Dkt. 84-8 ¶ 15.2.

The Court, sitting in diversity, "appl[ies] New York law to determine the scope of the contractual choice-of-law clause." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 333 (2d Cir. 2005) ("New York courts decide the scope of such clauses under New York law, not under the law selected by the clause."). And "under New York law, a choice-of-law provision indicating that the contract will be governed by a certain body of law does not dispositively determine that law which will govern a claim of fraud arising incident to the contract." *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996); *Knieriemen v. Bache Halsey Stuart Shields Inc.*, 427 N.Y.S.2d 10, 12–13 (1st Dep't 1980), *overruled on other grounds*, *Rescildo v. R.H. Macy's*, 594 N.Y.S.2d 139 (1st Dep't 1993); *see also Fin. One Pub. Co.*, 414 F.3d at 335. To the contrary, under New York law "tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause." *Fin. One Pub. Co.*, 414 F.3d at 335. Here, the subcontract does not even purport to contain a broader forum-selection clause. The Court therefore must conduct a choice of law analysis to determine whether New York or New Jersey law governs Integrated's fraud claim.

"The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993); *see also Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). An "actual conflict" exists where "the applicable law from each jurisdiction provides different substantive rules" and those differences are "relevant to the issue at hand" and "have a significant possible effect on the outcome of the trial." *Fin. One Pub. Co.*,

414 F.3d at 331 (internal quotation marks and citations omitted). "While the Court need not determine if a conflict of law would be outcome determinative, if a court finds that the effect would be the same under either state's law, there is no actual conflict." *Allied Prop. & Cas. Ins. Co. v. Matthews*, No. 16 Civ. 680 (DAB), 2018 WL 1737534, at *5 (S.D.N.Y. Mar. 20, 2018) (internal quotation marks omitted). "Absent an actual conflict, 'a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.'" *Id.* at *6 (quoting *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004)); *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 422 (2d Cir. 2006); *First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*, 52 F. Supp. 3d 625, 633–34 (S.D.N.Y. 2014).

Here, as noted, the FAC brings two fraud claims against Sergi personally: one claiming the fraudulent inducement of Integrated to enter into the subcontract with GN, FAC ¶¶ 183–95, 202, and the other claiming common law fraud by means of false representations and omissions throughout GN's performance (or non-performance) of the subcontract, *id.* ¶¶ 198–201, 203. The Court must therefore determine whether there is an actual conflict between New York and New Jersey law as pertinent to these theories of fraud. The Court concludes there is not.

To establish fraudulent inducement under New Jersey law, a plaintiff must prove: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012); *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981). Under New York law, the elements are the same: "[I]n order to state a claim for fraudulent inducement, there must be a knowing misrepresentation of material present fact, which is intended to deceive

another party and induce that party to act on it, resulting in injury." *Wyle Inc. v. ITT Corp.*,

13 N.Y.S.3d 375, 376 (1st Dep't 2015) (internal quotation marks omitted); *see also Wall*,

471 F.3d at 415–16. The burden of proof in each state is clear and convincing evidence.[5]

Relevant here, both states recognize a claim of fraudulent inducement to enter into a contract,

provided there has been a misrepresentation that is collateral or extrinsic to the promises in the

contract itself.[6] There is, therefore, no conflict between New York and New Jersey law

regarding fraudulent inducement.

There is also no conflict between New York and New Jersey as to the theory of common

law fraud as pursued by Integrated, *i.e.*, entailing fraudulent statements and material omissions

during the performance of a subcontract. Under New York law, "[t]he elements of a fraud cause

of action consist of a misrepresentation or a material omission of fact which was false and known

to be false by the defendant, made for the purpose of inducing the other party to rely upon it,

justifiable reliance of the other party on the misrepresentation or material omission, and injury."

*Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016) (internal quotation marks

omitted); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011); *Lama Holding Co.*

---

[5] *Compare Angrisani v. Capital Access Network, Inc.*, 175 F. App'x 554, 556 (3d Cir. 2006) (New Jersey law), *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (same), *and Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 214 F. Supp. 2d 453, 457 (D.N.J. 2002) (same), *with M Entm't, Inc. v. Leydier*, 897 N.Y.S.2d 402, 404 (1st Dep't 2010) (New York law), *and Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 219 (S.D.N.Y. 2007) (same), *aff'd*, 354 F. App'x 496 (2d Cir. 2009).

[6] *Compare Pac. Controls, Inc. v. Cummins Inc.*, No. 19 Civ. 3428 (CM), 2019 WL 6830790, at *9–10 (S.D.N.Y. Dec. 13, 2019) (New Jersey law), *Peters v. Countrywide Home Loans, Inc.*, No. 15 Civ. 6329 (FLW) (LHG), 2016 WL 2869059, *4 (D.N.J. May 17, 2016) (same), *and Montclair State Univ. v. Oracle USA, Inc.*, No. 11 Civ. 2867 (FLW), 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (same), *with Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (New York law), *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 298 (S.D.N.Y. 2015) (same), *and EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 275 (S.D.N.Y. 2004) (same).

*v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996). Similarly, under New Jersey law, "[t]o establish common-law fraud, a plaintiff must prove: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005) (internal quotation marks omitted); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). In each state, the burden of proof is clear and convincing evidence.[7]

Because there is no conflict between New York and New Jersey law as applied to either dimension of Integrated's fraud claim against Sergi, this Court will apply New York law in resolving Sergi's motion for summary judgment. *See Int'l Bus. Machs. Corp.*, 363 F.3d at 143 (absent an actual conflict, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

### B.     Fraud During Performance of the Subcontract

The Court considers, first, Integrated's claim that Sergi made a series of fraudulent misrepresentations during the course of the contractual relationship between Integrated and GN. FAC ¶¶ 198–201, 203. To establish such a claim of common law fraud, a plaintiff must establish "a misrepresentation or a material omission of fact[,] which was false and known to be false by the defendant, [and] made for the purpose of inducing the other party to rely upon it," together with a "justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Pasternack*, 27 N.Y.3d at 827 (internal alterations and citation omitted).

Where "a claim to recover damages for fraud is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are

---

[7] *Compare Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 349–50 (1999) (New York law), *with Angrisani*, 175 F. App'x at 556 (New Jersey law).

collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie." *McKernin v. Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (2d Dep't 1991); *Metro. Transp. Auth. v. Triumph Advert. Prods., Inc.*, 497 N.Y.S.2d 673, 675 (1st Dep't 1986) (dismissing fraud claim because it alleged "only a breach of the representation of performance implicit in making the bid and a subsequent assurance of performance by" defendant); *see also Bridgestone/Firestone, Inc.*, 98 F.3d at 19–20. But that principle applies only to certain parties: "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable"; it does not bar claims against a person who "was not a party to his company's contract, and is being sued personally for his [allegedly] willful misrepresentations, not for breach of any contract." *Sun Prod. Corp. v. Bruch*, 507 F. App'x 46, 47–48 (2d Cir. 2013) (citing *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 589 (1st Dep't 2003)). Integrated's claim against Sergi is, therefore, potentially viable. *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 212 (S.D.N.Y. 2019); *Taylor Precision Prod., Inc. v. Larimer Grp., Inc.*, No. 15 Civ. 4428 (ALC), 2018 WL 4278286, at *19 (S.D.N.Y. Mar. 26, 2018); *Wild Bunch, SA v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 502–03 (S.D.N.Y. 2017); *Estrada v. Dugow*, No. 15 Civ. 3189 (ER), 2016 WL 1298993, at *5 n.5 (S.D.N.Y. Mar. 31, 2016); *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 353 (E.D.N.Y. 2014).

The issue before the Court is therefore whether, based on the evidence adduced in discovery, a reasonable juror could find that Sergi committed fraud during the course of GN's subcontractor relationship with Integrated. On a motion for summary judgment, the Court applies the substantive standards that would apply at trial. *Anderson*, 477 U.S. at 255. Thus, Sergi, as the defendant and moving party, has "the burden of demonstrating an *absence* of clear

and convincing evidence substantiating [Integrated's] claim[]" of fraud. *Century Pac., Inc.*, 528 F. Supp. 2d at 219 (emphasis added); *see also Woo v. Times Enter., Inc.,* No. 98 Civ. 9171 (SAS), 2000 WL 297114, at *4 (S.D.N.Y. Mar. 22, 2000) (question at summary judgment is whether there is "enough proof to allow a reasonable jury to find by clear and convincing evidence the existence of each of the elements necessary to make out a claim for fraud" (citation omitted)).

> Clear and convincing evidence is
>
> evidence that makes the fact to be proved highly probable. This evidentiary standard demands a high order of proof and forbids the awarding of relief whenever the evidence is loose, equivocal or contradictory. This means that fraud will not be assumed on doubtful evidence or circumstances of mere suspicion. Clear and convincing evidence may, however, be circumstantial, even on summary judgment.

*Century Pac., Inc.*, 528 F. Supp. 2d at 219 (internal citations, alterations, and quotation marks omitted).

Courts in this District have cautioned that "summary judgment should be considered skeptically in cases alleging fraud[] . . . because the issues typically turn on the parties' credibility as to their state of mind." *Id.*; *see also Sound Video Unltd., Inc. v. Video Shack Inc.*, 700 F. Supp. 127, 135 (S.D.N.Y. 1988) (denying summary judgment on fraud claim where factual issue of defendants' intentions at time of transaction "hinges upon the credibility of the various parties"); *ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F. Supp. 434, 449 (S.D.N.Y. 1984) ("[S]ummary judgment should be cautiously invoked in fraudulent inducement cases, which raise issues that often turn on credibility or inference, such as intent and reliance."). New York courts similarly have "denied summary judgment where a plaintiff demonstrated the existence of specific facts from which a jury might infer that

defendants engaged in a scheme or plot to defraud." *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, No. 12 Civ. 627 (VSB), 2019 WL 632364, at *11 (S.D.N.Y. Feb. 14, 2019).

Here, the Court holds, Sergi has failed to establish that there is insufficient evidence by which a reasonable jury could find, by clear and convincing evidence, that he engaged in fraud during the course of GN's subcontract with Integrated by knowingly misrepresenting material facts. Three instances are illustrative.

First, as to the ordering of the blast-proof glass for the project, Integrated has proffered evidence from which a reasonable jury could find that Sergi made material misrepresentations or omissions as to whether he had ordered all of the glass from Patriot Armor, and/or when he had done so; that such statements or omissions were knowingly false; that Sergi intended for Integrated to rely on them; that Integrated did rely on them; and that Integrated suffered injury an in the form of construction delays that ultimately led to liquidated damages being assessed by the GSA. *See* Pl. 56.1 ¶¶ 7–8, 10–11, 13, 15–17, 19, 21–22, 23–26. For example, Integrated has produced email correspondence between the GSA, Integrated, Patriot Armor, and others dated November 17, 2015, in which Patriot Armor reports that "[w]e have 2 orders from GN Erectors currently in our system for the [Project]. One order is for 15 Pieces . . . [t]he next order is for 18 Pieces." *Id.*, Ex. K at 2. In response, project manager Robert Lautato writes, "[i]n addition to the (33) pieces of glass you are acknowledging below [as having been ordered], there is another (24) pieces of glass that we need and that GN is stating they have provided purchase orders for. Please see attached spreadsheet . . . ." *Id.*, Ex. K at 1. Integrated has also submitted spreadsheets from September and October 2015 which purport to have memorialized GN's contemporaneous representations that glass had been ordered when, Integrated alleges, it had not. *Id.*, Ex. B; *see id.*, Ex. A.

Second, Integrated has pointed to evidence from which a jury could find that Sergi knowingly made material misrepresentations to Integrated to the effect that he had paid Patriot Armor the $52,159.20 given to him by Integrated for that purpose, and that this falsehood caused delays in glass delivery to the Project site and required Integrated to make an additional payment of $20,459.20 directly to Patriot Armor. *See* Ramcharan Decl. Among other evidence, Integrated has submitted a September 16, 2015, email from Sergi, attaching a pro forma invoice from Patriot Armor for $52,159.20, in which Sergi writes, "make checks out to GN *and I will send overnight* to [Patriot] [A]rmor," Cherbaka Decl., Ex. W (emphasis added); and a November 7, 2015, invoice (Invoice #7852) from Patriot Armor itemizing an October 2, 2015, payment for $23,006.50, with a balance due of $20,459.50, Ramcharan Decl., Ex. C at 2. Integrated has also submitted a December 11, 2015, bill from Patriot Armor showing that the $20,459.50 balance from Invoice #7852 was unpaid and past due, *id.*, Ex. G, and a sworn affidavit that Integrated ultimately had to pay this amount directly to Patriot Armor, *see id.* ¶¶ 12–13; *see also* Pl. 56.1 ¶ 30. Sergi disputes both Integrated's account of what transpired and the implication that GN kept some of the money for itself. Sergi Reply Decl. ¶¶ 19–23. This presents a clear factual dispute which, if resolved by the jury in Integrated's favor, would support its claim of fraud.

Third, Integrated has pointed to evidence that would enable a reasonable jury to find that Sergi made knowingly false statements to Integrated regarding his ability to deliver, by what was initially an October 2015 deadline, shop drawings with the required ballistics calculations. Cherbaka Decl. ¶ 27. Although Sergi's mere failure to meet this deadline, *see, e.g.*, *id.*, Ex. U, would not establish fraud, *Martell Strategic Funding LLC*, 2019 WL 632364, at *11, the Court is persuaded that the communications between Sergi and others adduced during discovery provide a factual basis upon which a jury could conclude that Sergi's earlier representations to Integrated

regarding his intent and ability to meet the deadline were knowingly false. *Compare, e.g.*, Cherbaka Decl., Ex. P (November 14, 2014, email from Sergi to Integrated stating that he would not be able to provide ballistics calculations until completing certain measurements "and seeing what the architect notes are"), *with id.*, Ex. N (email correspondence from six weeks prior, in which Sergi responds to an email from Steve Memoli with draft shop drawings and remarks, "I . . . can't really show them these, I hope they are putting a lot more detail in them"),*and id.*, Ex. Q (November 4, 2014, text message from Sergi to Memoli stating "I'll ask Old[]Castle if the calculations will come with [the] drawings"); *see also id.*, Ex. T (December 15, 2014, email from Sergi to Memoli, after submitting shop drawings without ballistics calculations—and being told "the engineer will not review the shop drawings without" them—asking, "[d]o you know when we will get calc[]s from them?"); *id.* ¶¶ 27–40.

To be sure, a reasonable jury could also find for Sergi on any and all of these theories. Nevertheless, because the evidence would permit a jury to find knowing misrepresentations along these lines, and because such would support a verdict in favor of Integrated on its Eighth Cause of Action, the Court denies Sergi's motion for summary judgment as it relates to Integrated's theory that he engaged in fraud during GN's performance of the subcontract.[8]

### C.    Fraudulent Inducement

The Court next considers Integrated's theory of fraud through fraudulent inducement. *See* FAC ¶ 191.  "[T]o state a claim for fraudulent inducement, there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury."  *Wyle Inc.*, 13 N.Y.S.3d at 376 (internal quotation

---

[8] The Court does not have occasion to consider, and has not considered, the viability of the other instances of fraud alleged by Integrated in the FAC.  *See* FAC ¶ 203.

marks omitted); *see also Wall*, 471 F.3d at 415–16.  Integrated alleges that Sergi made three

material, false representations in order to induce Integrated to enter into the subcontract with GN,

to wit, that GN "[1] was financially sound, [2] had sufficient manpower to complete the job in a

timely fashion, and [3] had excellent relationships with its suppliers."  FAC ¶ 191.

As the moving party, Sergi has the burden of demonstrating the absence of clear and

convincing evidence that substantiates Integrated's theory of fraudulent inducement.  *Century*

*Pac., Inc.*, 528 F. Supp. 2d at 219.  Sergi has met his burden.  Integrated has not adduced facts

that support an inference that Sergi's own statements *at the time of contracting* were made with

an "inten[t] to deceive" Integrated and induce it on false pretenses to enter into a contractor-

subcontractor relationship.  Nor has Integrated pointed to evidence that would support the

inference that Sergi's generalized encomiums at the time of contracting about GN's financial

soundness, manpower, and supplier relations were false at all, let alone "knowing

misrepresentation[s] of material present fact."[9]  *See id.*  On the contrary, the second and third

representations on which Integrated relies come close to qualifying as the sort of puffery which

is inherently ill-suited to claims of fraud.[10]  *See Fink v. Time Warner Cable*, 810 F. Supp. 2d

633, 644 (S.D.N.Y. 2011); *Basquiat ex rel. Estate of Basquiat v. Sakura Int'l*, No. 04 Civ. 1369

(GEL), 2005 WL 1639413, at *5 (S.D.N.Y. July 5, 2005); *Union Car Advert. Co. v. Collier*, 263

---

[9] Integrated makes much of the fact that at the time Sergi entered into the subcontract on behalf of GN, the Project was the biggest that GN had undertaken, at least in terms of remuneration. *See* JSF ¶ 50; Cherbaka Decl. ¶ 15.  But that fact does not establish the falseness of Sergi's representations, let alone establish that these statements were made with awareness of their falsity and with an intent to deceive.

[10] Sergi's statement about GN's financial soundness is more arguably not puffery.  *See EED Holdings*, 387 F. Supp. 2d at 276.  Given Integrated's failure to establish the elements of fraudulent inducement as to this statement, however, the Court need not make such a determination.

N.Y. 386, 398 (1934) ("Exaggeration, puffing, boasting appear to be the very breath of salesmanship. We never expect detraction, always overemphasis. [Defendant] was a little bit too boastful, but he was bragging about his own business, which, if not commendable, is at least not unusual."); *Sirohi v. Lee*, 634 N.Y.S.2d 119, 120 (1st Dep't 1995); *Simon v. Cunard Line Ltd.*, 428 N.Y.S.2d 952, 955 (1st Dep't 1980); *cf. Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159–60 (2d Cir. 2007) (defining puffery in the context of false advertising). Integrated has not adduced evidence on which a reasonable juror could find by clear and convincing evidence that, through these statements, Sergi fraudulently induced Integrated to sign the subcontract agreement. Accordingly, Integrated's fraudulent inducement theory fails as a matter of law.[11]

The Court therefore grants Sergi's motion for summary judgment to the extent that it is directed to Integrated's theory of fraudulent inducement.

## CONCLUSION

For the reasons set out above, the Court grants Sergi's motion to for summary judgment as to Integrated's claim of fraud against Sergi to the extent it is based on a theory of fraudulent inducement, but denies the motion to the extent it is based on a theory of fraud during performance of the subcontract. The Clerk of Court is respectfully directed to terminate the motion pending at docket 84.

Barring settlement, this case will now proceed toward trial. The Court directs the parties, by March 13, 2020, to submit a complete joint pretrial order, consistent with the Court's

---

[11] In light of this ruling, the Court has no occasion to consider Sergi's alternative argument that, given GN's role as an authorized installer of Old Castle products, *see* JSF ¶¶ 23–26, Integrated in practice had little choice about whether to work with GN, such that Sergi's statements could not have induced it to enter into the subcontract, Sergi Reply Decl. ¶¶ 11–12.

individual rules, and accompanied by proposed voir dire, requests to charge, and motions *in limine*.  Responses to the motions *in limine* are due March 20, 2020.  Following receipt of these materials, the Court will schedule a conference with counsel to discuss the forthcoming trial, resolve motions *in limine*, and set a trial date.

The Court today is also issuing an order referring this case, for settlement purposes only, to the Hon. Barbara C. Moses, Magistrate Judge.  The Court directs counsel promptly to contact Judge Moses's chambers to arrange for a prompt settlement conference.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated: February 10, 2020
       New York, New York